

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F Street, N.E.
Washington, D.C. 20549

**OFFICE OF THE**
**GENERAL COUNSEL**

**Kerry J. Dingle**
202-551-6953
dinglek@sec.gov

September 4, 2025

Via CM/ECF

Anastasia Dubrovsky
Clerk of Court
United States Court of Appeals for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

      Re:  *SEC v. Gasarch et al.*, Nos. 24-1770, 24-1771, 24-1772, 24-1773, 24-1774, Citation of Supplemental Authority

Dear Ms. Dubrovsky:

      Pursuant to Federal Rule of Appellate Procedure 28(j), Appellee Securities and Exchange Commission respectfully submits the recent decision in *SEC v. Sripetch*, No. 24-3830 (9th Cir.) (attached) as supplemental authority in the above-referenced matter.  In *Sripetch*, the Ninth Circuit expressly agreed with this Court's holding in *SEC v. Navellier & Associates, Inc.*, 108 F.4th 19 (1st Cir. 2024), that "no showing of pecuniary harm is required for an award of disgorgement under [15 U.S.C.] §

Anastasia Dubrovsky
Clerk of the Court
U.S. Court of Appeals for the First Circuit
September 4, 2025
2 of 2

78u(d)(5) and (d)(7)."  Slip Op. 4; *see* SEC Br. 76-77.

Respectfully Submitted,

s/Kerry J. Dingle

Kerry J. Dingle
Securities and Exchange
Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-6953

Enclosure

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | No. 24-3830 |
| | D.C. No. 3:20-cv-01864-H-DTF |
| *Plaintiff - Appellee*, | |
| v. | |
| ONGKARUCK SRIPETCH, | OPINION |
| *Defendant - Appellant*, | |
| and | |
| AMANDA FLORES, BREHNEN KNIGHT, ANDREW MCALPINE, ASHMIT PATEL, MICHAEL WEXLER, DOMINIC WILLIAMS, ADTRON INC., also known as Stockpalooza.com, ATG INC., DOIT, LTD, DOJI CAPITAL, INC., KING MUTUAL SOLUTIONS INC., OPTIMUS PRIME FINANCIAL INC., ORCA BRIDGE, REDLINE INTERNATIONAL, UAIM CORPORATION, | |
| *Defendants*. | |

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted May 14, 2025
Pasadena, California

September 3, 2025

Before: John B. Owens, Mark J. Bennett, and Holly A.
Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas

---

## SUMMARY[*]

---

### SEC / Disgorgement Award

The panel affirmed the district court's disgorgement
award entered against Ongkaruck Sripetch under 15 U.S.C.
§ 78u(d)(5) and (d)(7) in a civil enforcement action brought
by the Securities and Exchange Commission (SEC).

The SEC charged Sripetch with six counts of securities
fraud under the Securities Act of 1933 and the Securities
Exchange Act of 1934 and one count of selling unregistered
securities in violation of the Securities Act. The SEC
sought, among other remedies, an order requiring the
defendants "to disgorge all ill-gotten gains" obtained

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

because of the alleged violations.  The district court ordered disgorgement of net profits in the amount of \$2,251,923.16, along with prejudgment interest.

Sripetch argued that the district court abused its discretion by ordering disgorgement because disgorgement under § 78u(d)(5) and (d)(7) requires a showing of pecuniary harm that the SEC failed to make.  Agreeing with the First Circuit, *SEC v. Navellier & Associates, Inc.*, 108 F.4th 19 (1st Cir. 2024), the panel held that the SEC is not required to show that investors suffered pecuniary harm as a precondition to a disgorgement award under § 78u(d)(5) or (d)(7).

---

**COUNSEL**

Kerry J. Dingle (argued), Senior Appellate Counsel; Daniel Staroselsky, Assistant General Counsel; Tracy A. Hardin, Solicitor; Megan Barbero, General Counsel; United States Securities and Exchange Commission, Washington, D.C.; Christopher J. Dunnigan, Special Trial Counsel, United States Securities and Exchange Commission, New York, New York; for Plaintiff-Appellee.

Tyler R. Creekmore (argued), Gregory T. Nolan, and Kenneth P. White, Brown White & Osborn LLP, Los Angeles, California, for Defendant-Appellant.

**OPINION**

H.A. THOMAS, Circuit Judge:

In this civil enforcement action, the Securities and Exchange Commission (Commission or SEC) sought, and the district court granted, a disgorgement award against defendant Ongkaruck Sripetch under 15 U.S.C. § 78u(d)(5) and (d)(7). Sripetch appeals, arguing that the district court abused its discretion by ordering disgorgement because the Commission failed to show that the investors defrauded by his actions suffered pecuniary harm. Our sister circuits have split on this question. The First Circuit, in *SEC v. Navellier & Associates, Inc.*, 108 F.4th 19 (1st Cir. 2024), held that no showing of pecuniary harm is required for an award of disgorgement under § 78u(d)(5) and (d)(7), while the Second Circuit, in *SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023), reached the opposite conclusion. Consistent with *Navellier*, we hold that an award of disgorgement does not require a showing that investors experienced pecuniary harm. We therefore affirm.

I

A

Disgorgement is a profits-based remedy arising under the law of restitution and unjust enrichment and grounded in the principle that "[a] person is not permitted to profit by his own wrong." *Restatement (Third) of Restitution and Unjust Enrichment* ("Restatement") § 3 (A.L.I. 2011). Under the common law, "[a] person who is unjustly enriched at the expense of another is subject to liability in restitution." *Id.* § 1. When a "conscious wrongdoer" is "enriched by misconduct"—defined as "an actionable interference by the

defendant with the claimant's legally protected interests"—
"the unjust enrichment . . . is the net profit attributable to the
underlying wrong." *Id.* § 51(1), (3), (4). "The object of
restitution in such cases is to eliminate profit from
wrongdoing while avoiding, so far as possible, the
imposition of a penalty." *Id.* § 51(4). "Restitution remedies
that pursue this object are often called 'disgorgement' or
'accounting.'" *Id.*; *see id.* cmt. a ("Restitution measured by
the defendant's wrongful gain is frequently called
'disgorgement.' Other cases refer to an 'accounting' or an
'accounting for profits.' Whether or not these terms are
employed, the remedial issues in all cases of conscious
wrongdoing are the same.").

"Initially, the only statutory remedy available to the SEC
in an enforcement action was an injunction barring future
violations of securities laws." *Kokesh v. SEC*, 581 U.S. 455,
458 (2017). "In the absence of statutory authorization for
monetary remedies, the Commission urged courts to order
disgorgement as an exercise of their 'inherent equity power
to grant relief ancillary to an injunction.'" *Id.* (quoting *SEC
v. Tex. Gulf Sulphur Co.*, 312 F. Supp. 77, 91 (S.D.N.Y.
1970)). Courts responded favorably to these requests, and
"[b]eginning in the 1970's, courts ordered disgorgement in
SEC enforcement proceedings in order to 'deprive . . .
defendants of their profits in order to remove any monetary
reward for violating' securities laws and to 'protect the
investing public by providing an effective deterrent to future
violations.'" *Id.* at 459 (second alteration in original)
(quoting *Tex. Gulf*, 312 F. Supp. at 92). In *SEC v. Clark*, 915
F.2d 439 (9th Cir. 1990), for example, we stated that "[t]he
SEC's power to obtain injunctive relief has been broadly
read to include disgorgement of profits realized from

violations of the securities laws." *Id.* at 453 (citing *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984)).

The legal bases for ordering disgorgement in SEC civil enforcement actions were strengthened in 2002, when Congress granted the SEC express authority to seek "any equitable relief" in civil enforcement actions. *See* Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 305, 116 Stat. 745, 779 (2002). Congress adopted a new provision, codified at 15 U.S.C. § 78u(d)(5), providing that "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." Courts thereafter relied on § 78u(d)(5) as a statutory basis for awarding disgorgement in SEC civil enforcement actions, treating disgorgement as a form of "equitable relief" authorized by this new provision. *E.g.*, *SEC v. World Cap. Mkt., Inc.*, 864 F.3d 996, 1003 (9th Cir. 2017) ("In [SEC civil enforcement] actions, federal courts may grant 'any equitable relief that may be appropriate or necessary for the benefit of investors,' 15 U.S.C. § 78u(d)(5), including disgorgement of the gains obtained from securities law violations.").

The Supreme Court, however, continued to leave unanswered the question of whether disgorgement qualifies as "equitable relief" authorized by § 78u(d)(5). In 2017, the Court expressly reserved both that question—*i.e.*, "whether courts possess authority to order disgorgement in SEC enforcement proceedings"—and the subsidiary question of "whether courts have properly applied disgorgement principles in this context." *Kokesh*, 581 U.S. at 461 n.3.

In 2020, the Court answered both questions in *Liu v. SEC*, 591 U.S. 71 (2020). As to the first question reserved in *Kokesh*, *Liu* ratified longstanding lower-court practice by holding that disgorgement qualifies as "equitable relief" under § 78u(d)(5). *Id.* at 75. This conclusion rested on the fact that "[e]quity courts have routinely deprived wrongdoers of their net profits from unlawful activity, even though that remedy may have gone by different names." *Id.* at 79.**[1]**

With respect to *Kokesh*'s second reserved question, *Liu* observed that the lower courts had occasionally erred by granting disgorgement awards exceeding the remedy's "common-law limitations." *Id.* at 85. The Court explained:

> Over the years, . . . courts have occasionally awarded disgorgement in three main ways that test the bounds of equity practice: by ordering the proceeds of fraud to be deposited in Treasury funds instead of disbursing them

---

[1] Although *Liu* held that disgorgement awards that adhere to common-law limitations qualify as "equitable relief" under § 78u(d)(5), the Court did not attempt to classify disgorgement as either "equitable" or "legal" in nature. Any such classification would be difficult because "the restitution remedy of disgorgement—stripping defendant's gain or profits—may be deemed either legal or equitable. It looks similar to a money award, but its historical roots include the equitable remedy of accounting for profits." Dan Dobbs & Caprice Roberts, *Law of Remedies: Damages, Equity, Restitution* § 4.1(1), at 376 (3d ed., West Academic Publishing, 2017). As the Restatement explains, "[t]he status of restitution as belonging to law or to equity has been ambiguous from the outset. The answer is that restitution may be either or both." Restatement § 4 cmt. a. "Outside the simplest cases, both claim and remedy in unjust enrichment will often contain elements that might be referred to either tradition." *Id.* cmt. d.

> to victims, imposing joint-and-several disgorgement liability, and declining to deduct even legitimate expenses from the receipts of fraud. The SEC's disgorgement remedy in such incarnations is in considerable tension with equity practices.

*Id.* (footnote omitted). The Court held that disgorgement under § 78u(d)(5) must conform to common-law limitations, by "return[ing] a defendant's gains to wronged investors" when practical, *id.* at 88, refraining from "impos[ing] disgorgement liability on a wrongdoer for benefits that accrue to his affiliates . . . in a manner . . . at odds with the common-law rule requiring individual liability for wrongful profits," *id.* at 90, and "restrict[ing] awards to net profits from wrongdoing after deducting legitimate expenses," *id.* at 84.

A year later, Congress created a second statutory basis for awarding disgorgement in SEC civil enforcement actions. *See* William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6501, 134 Stat. 3388, 4625–26 (2021). This legislation added 15 U.S.C. § 78u(d)(7), which states: "In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."[2] As

---

[2] The 2021 legislation also amended § 78u(d)(3). As amended, § 78u(d)(3) expressly authorizes the Commission to seek, and the district court to award, disgorgement under § 78u(d)(7):

> Whenever it shall appear to the Commission that any person has violated any provision of this chapter, the rules or regulations thereunder, or a cease-and-desist order entered by the Commission pursuant to section

Document: 00118336084    Page: 11    Date Filed: 09/04/2025    Ent

U.S. Sec. &Exch. Comm'n v. Sripetch            9

a result of this legislation, there are now two provisions authorizing disgorgement awards in SEC civil enforcement actions: subsection (d)(5) and subsection (d)(7).

Following these developments, two circuit splits have emerged regarding the proper scope of disgorgement in SEC civil enforcement actions. First, the Second and Fifth Circuits have disagreed about whether the common-law limitations discussed in *Liu* apply only to disgorgement under § 78u(d)(5) or apply to disgorgement under § 78u(d)(7) as well. *Compare SEC v. Ahmed*, 72 F.4th 379, 396 (2d Cir. 2023) ("[W]e conclude that disgorgement under § 78u(d)(7) must comport with traditional equitable limitations as recognized in *Liu*."), *with SEC v. Hallam*, 42 F.4th 316, 339 (5th Cir. 2022) (holding that § 78u(d)(7) "authorize[s] the sorts of disgorgement awards courts were ordering before *Liu*"). Second, as relevant here, the Second and First Circuits have disagreed about whether disgorgement under § 78u(d)(5) and (d)(7) requires a finding of pecuniary harm. *Compare Govil*, 86 F.4th at 106 ("'Equitable relief' requires that the relief be 'awarded for victims,' and that in turn requires a finding of pecuniary harm." (citation omitted) (quoting *Liu*, 591 U.S. at 75)), *with Navellier*, 108 F.4th at 41 n.14 ("Neither *Liu* nor our case

---

78u-3 of this title, other than by committing a violation subject to a penalty pursuant to section 78u-1 of this title, the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to . . . require disgorgement under paragraph (7) of any unjust enrichment by the person who received such unjust enrichment as a result of such violation.

15 U.S.C. § 78u(d)(3)(A)(ii).

law . . . require investors to suffer pecuniary harm as a precondition to a disgorgement award.").

B

The Commission brought this civil enforcement action against Sripetch and fourteen other defendants in 2020. The Commission alleged that the defendants "worked in concert to engage in numerous fraudulent schemes and other violations of the federal securities laws, involving at least 20 penny stock companies," and that they "obtained at least $6 million in illicit sale proceeds from this illegal conduct, while harming retail investors who purchased shares during the schemes." The Commission charged Sripetch with six counts of securities fraud under the Securities Act of 1933 and the Securities Exchange Act of 1934 and one count of selling unregistered securities in violation of the Securities Act. The Commission sought, among other remedies, an order requiring the defendants "to disgorge all ill-gotten gains" obtained because of the alleged violations.

In 2023, Sripetch consented to the entry of judgment against him. In doing so, Sripetch agreed that "the Court shall order disgorgement of ill-gotten gains [and] prejudgment interest thereon" and that, "solely for the purposes of [the SEC's] motion [for disgorgement], the allegations of the Complaint shall be accepted as and deemed true by the Court."

In its subsequent motion for remedies, the Commission asked the district court to order Sripetch to disgorge $4,115,365.88 in ill-gotten gains in accordance with 15 U.S.C. § 78u(d)(5) and (d)(7), along with prejudgment

interest.**³** Sripetch opposed the Commission's request for disgorgement. Relying on the Second Circuit's decision in *Govil*, 86 F.4th at 103–04, Sripetch argued that disgorgement under § 78u(d) "requires a finding that victims suffered pecuniary harm" and that the Commission failed to make this showing. In reply, the Commission urged the district court to reject *Govil*. Alternatively, the Commission argued that Sripetch's victims suffered pecuniary harm.

Relying on § 78u(d)(5) and (d)(7), the district court granted the Commission's motion in part and ordered disgorgement of net profits in the amount of \$2,251,923.16, along with prejudgment interest in the amount of \$1,051,353.77. *SEC v. Sripetch*, No. 20-cv-01864-H-BGS, 2024 WL 1546917, at \*7 (S.D. Cal. Apr. 8, 2024). The court assumed without deciding that a finding of pecuniary harm was required and concluded that the Commission had made the requisite showing. *Id.* at \*5. Sripetch timely appealed.

## II

"We review orders of disgorgement for an abuse of discretion." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010).

## III

Sripetch argues that the district court abused its discretion by ordering disgorgement. In his view, disgorgement under § 78u(d)(5) and (d)(7) requires a showing of pecuniary harm that the Commission failed to make in this case. The Commission responds by arguing that a finding of pecuniary harm is not required and, in the

---

³ Citing Sripetch's 21-month sentence of incarceration in a related criminal case, the Commission declined to seek a monetary civil penalty.

alternative, that it made the required showing. We agree with the Commission's first argument and therefore do not reach the second.**[4]**

A

The Second Circuit has held that a finding of pecuniary harm is required for an award of disgorgement under § 78u(d)(5), *see Govil*, 86 F.4th at 106, while the First Circuit has held to the contrary, *see Navellier*, 108 F.4th at 41. For the reasons that follow, we reject the reasoning of the Second Circuit and join the First Circuit in holding that a finding of pecuniary harm is not required.

The Second Circuit began its analysis by pointing out that disgorgement requires one or more victims. *See Govil*, 86 F.4th at 98. We agree with this premise. Section 78u(d)(5) authorizes "any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). *Liu* made clear that disgorgement under § 78u(d)(5) must be "awarded for victims." 591 U.S. at 75.**[5]** And disgorgement under the common law requires a claimant whose "legally protected interests" have been interfered with. Restatement § 51(1). A victim is therefore required.

---

[4] Although we do not decide whether the Commission made a showing of pecuniary harm, we note that the Commission's contention that the investors suffered pecuniary harm merely because they paid artificially inflated prices for securities is in tension with *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342–43 (2005).

[5] *Liu* derived the requirement that disgorgement under § 78u(d)(5) be awarded for victims from both the statutory language and common-law principles. *See Liu*, 591 U.S. at 87–90.

We disagree, however, with the Second Circuit's conclusion that "victim" is narrowly defined as an individual or entity that has suffered pecuniary harm. *See Govil*, 86 F.4th at 98 ("An investor who suffered no pecuniary harm as a result of the fraud is not a victim."); *id.* at 102 ("We . . . hold that a 'victim' for purposes of § 78u(d)(5) is one who suffers pecuniary harm from the securities fraud."). The Second Circuit's analysis fails to persuade for two reasons.

First, the Second Circuit's approach is contrary to the common law. As *Liu* makes clear, disgorgement under § 78u(d)(5) is governed by "common-law" principles and "traditional equity practice." *Liu*, 591 U.S. at 85, 87; *see also Kousisis v. United States*, 145 S. Ct. 1382, 1392 (2025) ("When Congress uses a term with origins in the common law, we generally presume that the term 'brings the old soil with it.'" (quoting *Sekhar v. United States*, 570 U.S. 729, 733 (2013))). Under these principles, disgorgement does not require a showing of pecuniary harm. At common law, a claimant seeking disgorgement need only show "an actionable interference by the defendant with the claimant's legally protected interests." Restatement § 51(1).[6] But the claimant need not show any loss whatsoever, let alone a pecuniary loss. *See id.* § 1 cmt. a ("While the paradigm case of unjust enrichment is one in which the benefit on one side of the transaction corresponds to an observable loss on the other, the consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss."); *id.* reporter's note d (noting that restitution requires no loss "other than a violation of the claimant's

---

[6] Sripetch does not argue that his victims did not suffer a violation of their legally protected interests. We therefore do not address that issue.

rights"); *id.* § 3 cmt. b (noting that disgorgement may be awarded in "cases in which a property owner may have suffered no quantifiable injury from the defendant's unlawful interference"); *id.* reporter's note a ("[T]here can be restitution of wrongful gain in cases where the plaintiff has suffered an interference with protected interests but no measurable loss whatsoever."); *id.* § 51 cmt. d ("So long as benefits wrongfully obtained have an ascertainable market value, that value is the minimum measure of the wrongdoing defendant's unjust enrichment, even if the transaction produces no ascertainable injury to the claimant and no ascertainable benefit to the defendant."); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120–24 (9th Cir. 1968) (affirming a disgorgement order where the plaintiffs "have shown no injury to themselves, no diversion of sales from them to the appellants, no direct competition from which injury may be inferable, and no palming off or fraudulent conduct"); *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 366 (4th Cir. 2015) ("It is blackletter law that a plaintiff seeking an accounting for profits need not suffer a financial loss. Requiring a financial loss for disgorgement claims would effectively ensure that wrongdoers could profit from their unlawful acts as long as the wronged party suffers no financial loss. We reject that notion." (citations omitted)); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) ("[T]he nature of disgorgement claims suggest that a financial loss is not required for standing, as a loss is not an element of a disgorgement claim.").

Second, in defining a victim narrowly as one who has suffered pecuniary harm, the Second Circuit misapprehended the meaning of certain language in *Liu*, certain language in the Restatement, and the relationship

between   private   securities   actions   and   SEC   civil
enforcement actions.

To begin, the Second Circuit erred by gleaning a
pecuniary harm requirement from *Liu*'s observation that
disgorgement "restores the status quo." *Liu*, 591 U.S. at 80
(alteration omitted) (quoting *Tull v. United States*, 481 U.S.
412, 424 (1987)). The Second Circuit concluded that this
language supports a pecuniary harm requirement because it
suggests that a victim's recovery through disgorgement
should be limited to her actual losses:

> If we were to understand "victim" as
> including defrauded investors who suffered
> no pecuniary harm—and thus to allow those
> investors to receive the proceeds of
> disgorgement—we would not be restoring
> the status quo for those investors. We would
> be conferring a windfall on those who
> received the benefit of the bargain.

*Govil*, 86 F.4th at 103.

But this suggestion ignores the fundamental distinction
between compensatory damages, which are designed to
compensate the victim for her losses, and restitution, which
is designed to deprive the wrongdoer of his ill-gotten gains.
As the First Circuit explained in *Navellier*:

> Disgorgement is a "profit-based measure of
> unjust enrichment" which reflects the
> foundational principle that "it would be
> inequitable that [a wrongdoer] should make a
> profit out of [their] own wrong." *Liu*, 591
> U.S. at 79–80 (alteration omitted) (first

> alteration in original). Disgorgement is thus "tethered to a *wrongdoer's* net unlawful profits." *Id.* at 80 (emphasis added). Consistent with this understanding, we have recognized the distinction between disgorgement, which is limited to "the amount with interest by which the defendant profited from his wrongdoing," and other forms of equitable relief which may "include[ ] total losses suffered by the victims." *CFTC v. JBW Cap.*, 812 F.3d 98, 111 (1st Cir. 2016).

108 F.4th at 41 (alterations in original); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 341 (2017) ("The equitable remedy of an accounting . . . [i]s not the same as damages. The remedy of damages seeks to compensate the victim for its loss, whereas the remedy of an accounting . . . s[eeks] disgorgement of ill-gotten profits."); Restatement § 3 reporter's note a ("[The Restatement is worded] to avoid any implication that the defendant's wrongful gain must correspond to a loss on the part of the plaintiff. . . . On the contrary, it is clear not only that there can be restitution of wrongful gain exceeding the plaintiff's loss, but that there can be restitution of wrongful gain in cases where the plaintiff has suffered an interference with protected interests but no measurable loss whatsoever."); *id.* § 51 cmt. a ("[Disgorgement] is measured by the defendant's profits, where the object of restitution is to strip the defendant of a

wrongful gain . . . . Recovery so measured may potentially exceed any loss to the claimant.").**[7]**

The Second Circuit also placed great weight on *Liu*'s statement that "[t]he equitable nature of the profits remedy generally requires the SEC to *return* a defendant's gains to wronged investors for their benefit." *Liu*, 591 U.S. at 88 (emphasis added). The Second Circuit reasoned that "[f]unds cannot be returned if there was no deprivation in the first place." *Govil*, 86 F.4th at 103. In the cited passage, however, the Court held only that disgorged profits generally must be disbursed to victims rather than deposited into the Treasury. *See Liu*, 591 U.S. at 87–90. The Court neither adopted a pecuniary harm requirement nor discarded the common law's definition of victim.

The Second Circuit further purported to find support for a pecuniary harm requirement in the Restatement itself. The court construed a reporter's note as requiring a claimant to demonstrate "impoverishment," which the court appears to have equated with pecuniary harm. *See Govil*, 86 F.4th at 103 n.15 (citing Restatement § 1 reporter's note d). The reporter's note in question, however, makes clear that only "a violation of the claimant's rights" is required, not impoverishment; indeed, the note describes impoverishment

---

[7] The Second Circuit also erred by equating restoration of the status quo with compensatory damages. Different remedies can restore the status quo in different ways. Suppose, for example, a thief takes plaintiff's $30 watch and sells it for $40. The $40 the plaintiff receives in restitution can be understood as restoring the status quo "because the fund of $40 is perceived as a gain produced by plaintiff's property, a gain plaintiff was entitled to make. . . . [A] [p]laintiff entitled to recover the watch is equally entitled to recover whatever is produced by or substituted for the watch," even if this recovery is "far superior to compensatory damages." Dobbs, *supra*, § 4.1(1), at 374.

as "too narrow" a term. *See* Restatement § 1 reporter's note d. [8] The reporter's commentary thus rejects the Second Circuit's view rather than supports it.

Finally, the Second Circuit found support for a pecuniary harm requirement by comparing private securities actions, which require a showing of economic loss, and disgorgement under § 78u(d)(5), which in the Second Circuit's view should include a comparable requirement:

> [T]he investors whom Govil defrauded could not pursue individual fraud claims against him without showing a pecuniary loss. Were we to call those investors "victims" without a similar showing, we would allow the SEC to forward proceeds of disgorgement to such investors and circumvent the limitations on

---

[8] The relevant portion of the reporter's note reads as follows:

> There is an understandable temptation to limit the far-reaching notion of unjust enrichment within the manageable confines of a checklist, but the attempt usually leads to trouble. See . . . LaSalle Nat'l Bank v. Perelman, 82 F. Supp. 2d 279, 294–295 (D. Del. 2000) ("The elements of unjust enrichment are: 1) an enrichment, 2) an impoverishment, 3) a relation between the enrichment and the impoverishment, 4) the absence of justification and 5) the absence of a remedy provided by law"). The first four elements of this list might make a plausible definition, though the reference to "impoverishment" is too narrow: there is often no "impoverishment" other than a violation of the claimant's rights. The fifth element is plainly erroneous, since so much of unjust enrichment is legal in origin.

Restatement § 1 reporter's note d.

private claims under § 10(b) and the common
law.

*Govil*, 86 F.4th at 104–05.[9] But this asymmetry between
private securities actions and SEC civil enforcement actions
is by design. Congress imposed an economic loss
requirement in private securities actions to address "abusive
litigation by private parties." *Tellabs, Inc. v. Makor Issues &
Rts., Ltd.*, 551 U.S. 308, 313 (2007). But as SEC civil
enforcement actions are not subject to abusive litigation by
private parties, Congress did not extend the economic loss
requirement to such actions. *See Gebhart v. SEC*, 595 F.3d
1034, 1040 n.8 (9th Cir. 2010). Reading an economic loss
requirement into § 78u(d)(5) would undermine, rather than
effectuate, the statutory scheme.

### B

Neither party argues, and there is no reason to suppose,
that the disgorgement remedy authorized by subsection
(d)(7) is narrower than the one available under subsection
(d)(5). Our holding that pecuniary harm is not required under
subsection (d)(5) thus also means that it is not required under
subsection (d)(7).

### IV

In sum, we join the First Circuit in holding that the SEC
is not required to show that investors suffered pecuniary
harm as a precondition to a disgorgement award under

---

[9] Economic loss is a basic element of a private securities fraud action
under Section 10(b) of the Securities Exchange Act. *See Dura Pharms.*,
544 U.S. at 341–42. Congress imposed the economic loss requirement,
codified at 15 U.S.C. § 78u-4(b)(4), as part of the Private Securities
Litigation Reform Act of 1995, Pub. L. No. 104-67, § 101, 109 Stat. 737,
747 (1995).

§ 78u(d)(5) or (d)(7). *See Navellier*, 108 F.4th at 41 & n.14. The judgment of the district court is therefore **AFFIRMED**.